## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 07-61503-CIV-ALTONAGA/TURNOFF

WERNER R. GARCIA, an individual, on behalf
of himself and all others similarly situated,

       Plaintiff,

vs.                                 **CLASS ACTION**

UNITED AUTO CREDIT CORPORATION,
a California corporation,

       Defendant.

_____/

### <u>MEMORANDUM IN OPPOSITION TO UNITED AUTO CREDIT CORPORATION'S MOTION TO DISMISS COMPLAINT</u>

Plaintiff, Werner R. Garcia, an individual ("Mr. Garcia"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, pursuant to Rule 7.1C, Local Rules of the United States District Court, Southern District of Florida, files this his Memorandum of Law in Opposition to the Motion to Dismiss Complaint filed herein by Defendant, United Auto Credit Corporation, a California corporation ("United Auto"), herein (DE 2).

## I.  INTRODUCTION

### A.  SYNOPSIS OF COMPLAINT ALLEGATIONS

The instant action was brought by Mr. Garcia against United Auto for violation of Florida law concerning the repossession sale of automobiles under Article IX, Part VI of the Uniform Commercial Code ("UCC"), Florida Statutes §679.601, *et sequi*. According to the allegations of the Complaint, on or about July 28, 2003, Mr. Garcia entered into a written retail installment sale

1

contract ("RISC") to finance the purchase of a used 2002 Chevrolet Tracker automobile

("Vehicle") for his personal and household use (Complaint ¶¶ 8, 10). Pursuant to the RISC, credit

was extended to Mr. Garcia at an annual percentage rate in excess of eighteen percent (18%)

(Complaint - Exhibit "A").  The RISC was subsequently assigned to United Auto, a sub-prime

lender which offers financing at high interest rates in excess of eighteen percent (18%)

(Complaint ¶¶11 & 21).

On or about January 4, 2007, United Auto repossessed the Vehicle (Complaint ¶12). On

the same day as the repossession, United Auto sent or caused to be sent to Mr. Garcia a notice

advising him of its intent to dispose of the Vehicle in purported compliance with the

requirements of the UCC ("Notice of Sale") (Complaint ¶13). A copy of the Notice of Sale is

attached to the Complaint as Exhibit "B" (Complaint ¶14).

It is the position of Mr. Garcia that the Notice of Sale fails to comply with the UCC in the

following respects:

A.    <u>Statement Concerning Intended Method of Disposition</u> - United Auto failed to

specify if it intended to dispose of the Vehicle by public or private sale, and, if by public

sale, the time and place of such sale, as required by Florida Statutes §§679.614(1)(a) and

679.613(1)(c) and (e);

B.    <u>Description of Liability for Deficiency</u> - United Auto did not properly

describe the liability of the Plaintiff under the Florida Consumer Finance Act, Florida

Statutes Chapter 516, for a deficiency, as required by §679.614(1)(b), Florida Statutes;

C.    <u>Accounting</u> - United Auto did not disclose that Mr. Garcia was entitled to

an accounting of the unpaid indebtedness and the charge, if any, for an

accounting, as required by Florida Statutes §§679.614(1)(a) and 679.613(1)(d);

D.      Disclosure Concerning Telephonic Contact Information for Redemption -
United Auto failed to provide a telephone number to call to find out the amount
required to redeem the collateral under Florida Statutes §679.623 as required by
§679.614(1)(c);

E.      Disclosure Concerning General Contact Information - United Auto failed
to provide the telephone number or mailing address from which additional
information concerning the disposition and the obligation secured is available as
required by Florida Statutes §679.614(1)(d); and

F.      Right to Redemption - United Auto failed to disclose to Plaintiff and the other
members of the Class the correct time period for redemption as required by Florida
Statutes §679.623.

As a result of the business practices of United Auto with respect to post-repossession
notices to consumers, Mr. Garcia has filed the instant Complaint on behalf of himself and all
others similarly situated seeking statutory damages and other relief against United Auto under the
civil remedies provision of Florida Statutes §679.625.

## B.  SYNOPSIS OF APPLICABLE CONSUMER LAW

### 1.  As to Uniform Commercial Code.

UCC Article IX is the fundamental law regulating security interests and repossession of
personal property. Article IX offers a framework for determining whether a creditor has a valid
security interest, when and how it can repossess and dispose of collateral, and the rights of
creditor and debtor after collateral's disposition. When a party enforces its remedies under

Article IX, Part VI, but fails to comply with its requirements, Florida Statutes §679.625 specifies

the remedies of a debtor. Actual damages are available for any Article IX violation. Further, if

the collateral is a consumer good — as in the instant case — Florida Statutes §679.625(3)(b)

makes minimum statutory damages available for almost any violation of Part VI, Article IX,

including repossessions that breach the peace, defective notices of sale, and the failure to dispose

of repossessed collateral in a commercially reasonable manner. Even otherwise technical

violations, such as failing to provide proper notice of sale or obtaining a waiver prohibited by

Article IX, can trigger the consumer remedies. See, e.g., Stoppi v. Wilmington Trust Company,

518 A.2d 82 (Del. 1986); Walker v. V.M. Box Motor Company, 325 So.2d 905 (Miss. 1976);

Joyce v. Cloverbrook Homes, Inc., 344 SE 2d 58 (1986); Erdman v. Rants, 442 NW 2d 441

(N.D.1989)][consumer entitled to damages under former U.C.C.§9-507 (now U.C.C. §9-625)for

lack of notice even though sale was commercially reasonable].

     As stated in the Comments to the civil remedies provision of Article IX:

> **4.   Minimum Damages in Consumer-Goods Transactions.**   Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9-507(1) and is designed to ensure that **every noncompliance** with the requirements of Part 6 in a consumer-goods transaction results in liability, **regardless of any injury that may have resulted**.

                  *Comment 4*, Florida Statutes §679.625 (emphasis added)

     As more particularly described below, United Auto failed to comply with the UCC with

respect to the form and content of the post-repossession notices represented by the Notice of

Sale.  Accordingly, statutory damages flow under the civil remedies provision of Article IX.

Florida Statutes §679.625(3)(b).

4

## 2.   As to the Florida Lending Practices Act.

The history of usury regulation is to a large degree an account of conflict between the conviction that the lending of money at high interest rates is predatory and immoral and the fact that such money lending may be necessary for commerce.  See, generally, *The Two-Tiered Consumer Financial Services Marketplace: The Fringe Banking System and its Challenge to Current Thinking About the Socio-Economic Role of Usury Laws in Today's Society.*  51 U.S.C. Law Review 35 (2000).  As a result of the conflict, the structure of credit statutes in most states today mandates a usury ceiling riddled with statutory exceptions for particular creditors or transactions.  The statutory exceptions are known as "special" usury laws because of their limited scope to a specific area of finance, e.g., small loans, pawn brokers, etc.

With respect to the financing of automobiles, the legislatures of most states adopted retail installment sales acts ("RISAs") in the 1940's and the 1950's.  Such statutes regulate traditional fixed-term credit sales of consumer goods.  Florida adopted the "Motor Vehicle Retail Sales Finance Act" ("FRSFA"), Florida Statutes §520.01, *et sequi,* in 1957.  Under Florida Statutes §520.08, the finance charge may exceed the usury limit under a graduating schedule based on the age of the motor vehicle.  However, the special lending laws such as the FRSFA are subject to further limitations on the ability of creditors such as United Auto to obtain deficiencies against consumers under what are commonly known as "anti-deficiency" statutes.  See, Florida Statutes §516.31(3).

As detailed below, through the post-repossession notices represented by the Notice of Sale, United Auto asserted an entitlement to a deficiency in a manner which ignores the restraint of the anti-deficiency statute.  Thus, United Auto has acted in a commercially unreasonable

manner with respect to the disposition of collateral to the extent that statutory damages under the

UCC are properly awarded to Mr. Garcia and the members of the Class.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss, the standard of review is well-settled:

> "In general, a motion to dismiss for failure to state a claim should not be granted
> unless it appears certain that the plaintiff can prove no set of facts which would
> support its claim and would entitle it to relief. In considering a motion to dismiss,
> the court should accept as true all well-plead allegations and should view the
> complaint in a light most favorable to the plaintiff."

Mylan Labs, Inc. v. Matkari, F.3d 1130, 1134 (4th Cir. 1993), citing DeSole v. United States, 947

F.2d 1169, 1171 (4th Cir. 1991).

A complaint should not be dismissed under Rule 12(b)(6), Federal Rules of Civil

Procedure, for failure to state a claim upon which relief may be granted "unless it appears beyond

doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed. 2nd 80 (1957).

Further, the court's consideration is limited to the assertions made within the four corners of the

complaint, to documents attached to the complaint as exhibits reference to matters for which

judicial notice may be taken, and to documents either in the plaintiff's possession or of which

plaintiff had knowledge and relied on in bringing the suit.  Brass v. American Film Tech., Inc.,

987 F.2d 142, 150 (2nd Cir. 1993).  "In short, the function of a motion to dismiss is merely to

assess the legal feasibility of the complaint, not to assay the weight of the evidence which may be

offered in support thereof." Amalgamated Bank of New York v. Marsh, 823 F.Supp. 209, 215

(S.D. N.Y.1993).

All that is required is a "short and plain statement of the claim." Rule 8(a)(2), Federal

Rules of Civil Procedure. The standard under a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail on his or her theories but whether the allegations are sufficient to allow discovery in an attempt to prove the allegations. See, Jackam v. Hospital Corp. of Amer.Mideast, Ltd., 800 F.2d 1579 (11th Cir.1986). The Federal Rules of Civil Procedure have adopted this "simplified pleading" approach because of the "liberal opportunity for discovery and other pretrial procedures … to disclose more precisely the basis of both the claim and of the defense." 355 U.S. at 48, 78 S.Ct. 1999. The purpose of notice pleading is to reach a decision on the merits and to avoid turning pleading into a "skill in which one misstep by counsel may be decisive to the outcome."Id.

### III.   LEGAL ARGUMENT

**A.  THE NOTICE OF SALE IS DEFECTIVE AS A RESULT OF THE FAILURE OF UNITED AUTO TO DISCLOSE THE METHOD OF INTENDED DISPOSITION OF COLLATERAL UNDER FLORIDA STATUTE §§679.614(1)(a) and 679.613(1)(c).**

#### 1.   Overview of Liability of United Auto

*a.   The Uniform Commercial Code imposes a commercially reasonable standard with respect to every aspect of the disposition of collateral.*

The fundamental rule concerning the sale of repossessed property is that every aspect of the sale must be commercially reasonable, including the notice, method, manner, time, place and terms of the sale, and the accounting to the debtor for any surplus proceeds after the sale. Indeed, even the decision to repossess, when the cost of repossession or disposition far exceed the value of the collateral, may be found to be commercially unreasonable.  See, e.g. First Fidelity Acceptance v. Hutchins, 717 A.2d 437 (N.J. Supra 1998).

Notwithstanding the importance of commercial reasonableness, the Uniform Commercial

Code does not define "commercial reasonableness," leaving the decision to be determined on a case by case basis.  One commentator concerning the Uniform Commercial Code has equated commercial reasonableness with "good faith" or a "reasonable regard for the pledger's right." Grant Gilmore, Security Interest in Personal Property, §44.5 (1965); see also; Solfaneoli v. Core States Bank, 203 F. 3d 497 (3rd Cir. 2000) ["test to determine 'commercial reasonableness' should be whether the sale's every aspect is characterized by: (1) good faith, (2) avoidance of loss, and (3) an effective realization."]; In Re Emergency Beacon Corp, 48 B.R. 341 (Bankr.S.D. N.Y. 1985) [secured party must protect debtor's interest as well its own; cannot "dump" collateral in order to increase deficiency].

### b.  United Auto was required to send reasonable notice of the sale or other disposition of the Vehicle.

Florida Statutes Section 679.611 of the Uniform Commercial Code requires reasonable notice of the sale or other disposition of repossessed collateral.  The notice of sale is of utmost importance to the consumer. It tells a consumer when to expect loss of the property if actions are not taken to redeem it or otherwise to prevent the sale. It informs the debtor of the kind of sale to be held and gives the debtor the opportunity to attend the sale or to persuade friends, relatives and others to attend the sale and bid, best reducing the size of any deficiency or increase in the surplus.  See, e.g., In Re Hardy, 17 U.C.C. Rep. Serv. 633 (Bankr. N.D. Ohio 1975); HEW Federal Credit Union v. Battle, 772 A.2d 252 (D.C.2001); Thong v. M.H. Home Harbor, Inc., 3 S.W. 3d 377, 39 U.C.C. Rep. Serv. 2d 941 (Mont.C.T. App. 1999); Willington Trust Company v. Connor, 4015 A.2d 773, 28 U.C.C. Rep. Serv. 900 (Del. 1980). Proper notice is an essential element of a commercially reasonable sale.

8

## 2.   Analysis of Defective Notice of Sale Concerning Method of Intended Disposition

### a.   Article IX requires specificity concerning type of sale

In the instant action, Mr. Garcia has alleged that the Notice of Sale was defective as it failed to specify whether United Auto intended to dispose of the Vehicle by public or private sale (Complaint ¶¶ 2,15A). Further, if United Auto intended to sell the Vehicle by public sale, it was required to disclose the time and place of such sale as required by Florida Statutes §§679.614 (1)(a) and 679.613(1)(e) (Complaint ¶15A).

The former version of Article IX did not explicitly require that the creditor describe the method by which it intended to dispose of the collateral.  Nonetheless, a number of courts found disclosure of such information to be an implicit requirement, and held that the notice must state whether the sale be public or private.  See, e.g., Union Safe Deposit Bank v. Floyd, 76 Cal.App. 4th 25 (1999) [California U.C.C. requires strict compliance and "does not permit the creditor to leave the debtor guessing regarding the type of sale contemplated"]; Landmark First National Bank v. Gepetto's Tale of the Whale, Inc., 498 So.2d 920 (Fla.1986).  Revised Article IX (effective date January 1, 2002) makes the requirement explicit; the creditor must state the method of disposition — whether public or private — in order to comply with the Uniform Commercial Code.  See, Florida Statutes §679.613(1)(c) and 679.614(1)(a).  In Re Downing, 286 B.R. 900, 904 (Bank. W.D. Mo. 2002)[revised code "clearly required [creditor] to inform debtor as to whether it would sell the car at either a private or public sale"]; Union Safe v. Floyd, 90 Cal. Rptr. 36 (3rd District 1999).

### b.   A creditor must state the correct type of sale.

Courts have held under the former version of Article IX that if the creditor notifies the

debtor that a private sale will be held and in fact holds a public sale, or the notice states that a public sale will be held and a private sale is held, the notice is defective. Miller v. First National Bank of East Arkansas, 780 S.W. 2d 589 (1989); Bank of America v. Lallana, 960 P.2d 1133 (1988); First National Bank of Belen v. Jiron, 741 P.2d 1382 (N.M. 1987); In re Webb, 17 U.C.C. Rep. Serv. 627 (S.D. Ohio 1975); Connecticut Bank and Trust Company v. Incendy, 540 A.2d 32 (1980); Hertz Commercial Leasing Corporation v. Dynatron, Inc., 427 A.2d 872 (Conn.1980); Hayes v. Ring Power Corporation, 431 So.2d 226 (Fla. 1st DCA 1983); National Boulevard Bank of Chicago v. Jackson, 416 NE 2d 358 (Ill. 1981) [no public sale held on noticed date; private sale three months later with no notice].

A creditor can sell collateral by either a public or private sale, but the choice of a private or public sale must be commercially reasonable, and the notice of sale must correctly identify the method of sale.  Each type of sale imposes different requirements on the creditor.

### c.  *"Dealer only" auctions are not public sales.*

The Official Comment to Article IX defines "public sale" as:

One at which the place is determined after the public has had a meaningful opportunity for competitive bidding.  "Meaningful opportunity" is meant to imply that some form of advertisement or public notice must precede the sale (or other disposition) and that the public must have access to the sale (disposition).

Official Comment 7 to UCC § 9-6.1.

The courts have held that a public sale must be accessible to all members of the public. See, e.g., Fort Motor Credit v. Solway, 825 F.2d 1213 (7th Cir. 1987) [applying Illinois law]. "Dealer only" auto auctions — open only to automobile dealers — are "private sales."  Id. at 1215; see also, Beard v. Ford Motor Credit Company, 850 S.W.2d 23 (Ark. 1993) [private sale

because restricted to dealers and not open to public]; John Deery Motors, Inc. v. Steinbronn, 383 N.W.2d 553 (Iowa 1986); Garden National Bank of Garden City v. Cada, 738 P.2d 429 (Kan.1987); Union National Bank of Wichita v. Schmitz, 853 P.2d 1180 (Kan. Ct. Ap. 1993); Ford Motor Credit v. Mathis, 660 So.2d 1273 (Miss. 1995); Coy v. Ford Motor Credit Company, 618 A.2d 1024 (Pa. Sup. Ct. 1993) [if "public" not invited, sale is private.]

### d. The Notice of Sale did not provide the required details of the impending sale.

In its Motion to Dismiss, United Auto — through a tortured and uninformed reading of the UCC — asserts that "neither sections 679.613 or 679.614 required UACC to disclose whether the sale was public or private" (Motion to Dismiss- p.4). Under the authority of well-established case law in Florida and other states, as well as the plain reading of the statute, United Auto is wrong.

As stated above, §679.613(1)(c) requires a secured party to "state the method of intended disposition." Further, the secured party must "state the time and place of public disposition or the time after which any other disposition is to be made." Florida Statutes §679.613(1)(e). This means that a public sale requires notice of the "time and place" of the sale, while a private sale owner requires notice of the time after which any sale was to be made. See, Florida Statutes §679.613(1)(e); see, also, In re: Gott, 114 B.R.708, 710 (E.D.Ca.1990)[interpreting Florida notification requirements].

In Landmark First National Bank in interpreting pre-revision Article IX, the Florida Supreme Court held that notification as to the nature of sale that did not specify whether the sale was to be public or private was insufficient in that the debtor could not know what steps to take to protect their interest. 498 So.2d at 922; see, also, People's Heritage Savings Bank v. Theriault,

11

670 A.2d 1391, 1393 [holding that a notice that fails to identify either a public or private sale is deficient as a matter of law]. In a similar fashion, the failure to notify a debtor of the time and place of a public sale violates the notification requirements of §679.613. In <u>Horta v. Flanagan Enterprises Employees Credit Union, Inc.</u>, the Florida Third District Court of Appeal held that a debtor must be notified by a secured party of the time and place of the sale of a public auction of the repossessed vehicle. 488 So.2d 657, 657-58 (Fla.3rd DCA 1986). Thus, by use of the word "auction," United Auto failed to inform Mr. Garcia and the other members of the class as to the method of disposition.

### 3.   United Auto's Failure to Use Statutory "Safe-Harbor" Forms

The drafters of revised Article IX provided two "safe harbor" forms of notice — one for consumer-good transactions and an abbreviated version for other transactions. <u>See</u>, §§679.614(3) and 679.613(5). The forms include all the language necessary to satisfy Article IX's notice requirements. In consumer-good transactions, if the form notice is used, additional information may be added at the end of a form without impairing the safe harbor, as long as there are not any errors in the additional information that are misleading with respect to Article IX rights. [1] <u>See</u>, Florida Statutes §679.614(5). For reasons best known to United Auto, United Auto chose not to use the model forms. As the Florida legislature provided a safe harbor form that, when properly completed, satisfies the requirements of the UCC, United Auto essentially acted at its own peril when it deviated from the model form.

In its Motion to Dismiss, United Auto completely overlooks the directive of the Florida

---

[1]  As seen below, the additional information concerning redemption rights was misleading to the extent liability was created under the UCC.

12

legislature in enacting revised Article IX. Unlike the former version of Article IX, the current

version contains an explicit requirement that the secured party "state the method of intended

disposition." Florida Statutes §679.613(c).  The confused analysis of United Auto concerning its

obligations under the UCC is reflected in the following excerpt from the argument of United

Auto:

> In this case, the Notice informed Garcia that the car would be sold at "auction" on
> January 16, 2007. Because UACC did not dispose of the collateral by **public** sale,
> it was not required to provide the time and place of disposition, and it did not give
> him notice of the time after which private disposition of the collateral would be
> made  - in this case, on January 16, 2007 at 8 am.

(Motion to Dismiss - p.5; emphasis by United Auto)

Under Florida law, an "auction" — without any other descriptive term[2] — is considered a

public sale.  "The UCC intended that 'privately arranged' sales constitute 'private sales' while

auctions and 'fire sales' are indicative of a 'public sale.' " <u>Gott</u>, 114 B.R. at 710 (emphasis

added). This position is underscored by the Comments to Section 2-706 of the UCC  which

"expressly defines public and private sales … as sale by 'auction' and sale by solicitation and

negotiation respectively". <u>Id</u>.

The Florida Supreme Court interpreted the pre-revision UCC as requiring that the notice

must specify whether the sale would be public or private in order for the debtor to know what

steps to protect his or her interest. <u>Landmark First National Bank</u>, 498 So.2d at 922. Revised

Article IX  codifies this requirement. Florida Statutes §679.613(1)(c). Since Mr. Garcia has

alleged that United Auto failed to specify whether the sale would be public or private, Mr. Garcia

---

[2]Even if United Auto had inserted the adjective "dealer-only"to describe the word
"auction," it would still have violated the UCC's notice requirement as it would still create
confusion as to whether a private or public sale was intended.

13

has properly stated a cause of action.

### 4.   The Naked Assertion of a "Private Sale" by United Auto

Even more compelling is the fact that United Auto — without anything of record in the four corners of the Complaint — claims that it sold the Vehicle at a "private sale." (Motion to Dismiss - p.5). However, United Auto actually notified Mr. Garcia of a "public sale" procedure, i.e., an "auction." Perhaps United Auto confused a "dealer only" auction described above with a public sale.  If it meant to notify Mr. Garcia of such a disposition, it was required to simply tell Mr. Garcia that a private sale was intended. It did not.

In any event, disposing of a repossessed vehicle by "auction" triggers the necessity of compliance with public sale notice requirements rather than the more liberal notice allowed for private sales. This position is especially compelling when the "safe harbor" form is studied. <u>See</u>, Florida Statutes §679.614(3).  As a result, Mr. Garcia states a cause of action by alleging that United Auto failed to specify the type of sale and the corresponding time and place of a public sale, if one was in fact intended.

### B.   THE NOTICE OF SALE VIOLATES ARTICLE IX, UNIFORM COMMERCIAL CODE, FLORIDA STATUTE §679.614(1)(b), AS IT FAILS TO PROPERLY DISCLOSE THE DEFICIENCY LIABILITY OF MR. GARCIA AND THE OTHER CLASS MEMBERS UNDER THE FLORIDA ANTI-DEFICIENCY STATUTE.

### 1.  Interrelationship Between Consumer Lending Law and Article IX

The Uniform Commercial Code permits a creditor to seek a deficiency after the sale of repossessed collateral.  However, half of the states, including Florida, have enacted legislation which limits deficiencies concerning certain consumer transactions.  Florida Statutes §516.31(3);

see also, e.g., Alabama Code Section 5-19-13; Arizona Statute Section 44-5501; Massachusetts

General Laws Chapter 255D, Section 22(d).  Such statutes disallowing or limiting deficiency

claims are often called election of remedy or "anti-deficiency" statutes.

Florida Statutes §516.31(3) provides:

> **(3) Limitation of Deficiency Claims** - If the creditor takes possession
> of property which was collateral under a consumer credit transaction,
> the consumer shall not be personally liable to the creditor for any
> unpaid balance of the obligation unless the unpaid balance of the
> consumer's obligation at the time of default was $2,000.00 or more.
> When the unpaid balance is $2,000.00 or more, the creditor shall
> be entitled to recover from the consumer the deficiency, if any,
> resulting from deducting **the fair market value of the collateral from
> the unpaid balance due**.  In a proceeding for deficiency, the fair market
> value of the collateral shall be a question for the trier at fact.
> Periodically published trade estimates of the retail value of the
> goods shall, to the extent they are recognized in a particular trade or
> business be presumed to be the fair market value of the collateral.

> Florida Statutes §516.31(3) (emphasis added)

The Florida anti-deficiency statute applies to any "consumer finance loan" which is

defined under Florida Statutes §516.01(2) as an extension of credit of $25,000.00 or less wherein

the lender charges, contracts or, collects or receives interest at a rate greater than 18% per annum.

The extension of credit in the instant proceeding is subject to the Florida Consumer Finance Act.

## 2.  Misstatement of Liability for Deficiency by United Auto

Pursuant to the Purported Notice of Sale, United Auto provided the following disclosure

with respect to the liability of Mr. Garcia for a deficiency:

> Notice: you may be subject to suit and liability if the amount
> obtained upon disposition of the vehicle is insufficient to pay the
> contract balance and other amounts due.

> (Complaint - Exhibit "B").

As demonstrated above, the Notice of Sale does not properly disclose the limitation on deficiency claims set forth under Florida Statutes §516.31(3). Specifically, the amount of sale proceeds from the repossession sale of the Vehicle is completely irrelevant with respect to the determination of a deficiency.  Rather, as seen above, if the unpaid balance was $2,000.00 or more, United Auto as a creditor could only recover a deficiency from Mr. Garcia or the other putative class members as a consumer if the **fair market value** of the collateral was less than the amount of the indebtedness.  Moreover, if the unpaid balance of the consumer loan was $2,000.00 or less, Mr. Garcia and the other putative class members would have absolutely no obligation whatsoever to United Auto for a deficiency. As such, the disclosure is misleading. See, Florida Statutes §679.614(5).

The failure of United Auto to properly disclose the liability of Mr. Garcia and others for a deficiency deprives consumers of valuable information pertaining to the disposition of their property.  More importantly, the conduct of United Auto — in failing to comply with the requirements of the Florida Consumer Finance Act — is reasonably calculated to cause persons such as Mr. Garcia to be held responsible for deficiencies which are not authorized under Florida law.

**C.   THE NOTICE OF SALE VIOLATES ARTICLE IX, UNIFORM COMMERCIAL CODE, AS A RESULT OF THE FAILURE OF UNITED AUTO TO DISCLOSE THAT MR. GARCIA WAS ENTITLED TO AN ACCOUNTING OF THE UNPAID INDEBTEDNESS AS REQUIRED BY FLORIDA STATUTES §§679.614(1)(a) AND 679.613(1)(d).**

**1.  Overview of Accounting Disclosure Violation**

In his Complaint, Mr. Garcia alleges that United Auto violated Article IX by failing to

16

disclose to Mr. Garcia that he was entitled to an accounting of the unpaid indebtedness and the charge, if any, for any accounting, as required by Florida Statutes §§679.614(1)(a) and 679.613(1)(d) (Complaint ¶15C).  In response to this aspect of the claim, United Auto magnanimously states that the Notice of Sale "offered greater benefit to the consumer" as it provided a "full accounting, free of charge, and gave him the address from which he could seek a detailed post-sale accounting of the amounts he owed." (Motion to Dismiss- p.7). Thus, according to United Auto, it went beyond what it was required to do under the statute and thus there is no liability.

The argument of United Auto is flawed for two reasons. First, the argument runs in the face of the plain language of the statute. Secondly, United Auto overlooks the fact that its gratuitous "accounting" in the Notice of the Sale was not the "full accounting" that consumers such as Mr. Garcia are entitled to.

## 2. Review of Rules of Statutory Interpretation.

Revised Article IX was adopted by the Florida legislature in 2001, with an effective date of January 1, 2002. In adopting the model law of the UCC, the Florida legislature directed that notification of disposition shall **state** that the debtor is entitled to an accounting of unpaid indebtedness and **state** the charge, if any, for an accounting. Florida Statutes §679.613(1)(d).

Thus, together with the requirement that the secured party state the method of intended disposition, a secured party must disclose the right to an accounting of unpaid indebtedness. The argument of United Auto offends the most venerable canon of statutory construction to discern legislative purpose.  "There is, of course no more persuasive evidence than the purpose of the statute than the words by which the legislature undertook to give expression to its wishes."

United States v. American Trucking Association, Inc., 310 U.S. 534, 543 (1940).  No principle is

more firmly enshrined in the methodology of statutory analysis that when the language employed

by Congress is clear, that text controls and no further inquiry is permitted.  Estate of Cowart v.

Niklos Drilling Company, 505 U.S. 469, 475 (1992).

> As stated by the Ninth Circuit in United States v. Hanousek:
>
> Statutory interpretation begins with the plain language of the statute.  See,
> Consumer Product Safety Commission v. GT Sylvania, Inc., 447 U.S. 102, 108,
> 100 S.Ct. 2051, 64 L.Ed. 2nd 776 (1980).  If the language of statute is clear, we
> need look no further than the language in determining the statute's meaning. See,
> United States v. Lewis, 67 F.3d 225, 228 (9th Cir. 1995).

> United States v. Hanousek, 176 F.3d 1116, 1121 (9th Cir. 1999).

With respect to interpreting consumer statutes, the 11th Circuit in the recent decision of

Owens v. Samkle, 425 F.3d 1318 (11th Cir. 2005) has made it crystal clear that courts are to read

and enforce the plain language of the statute.  In Owens, the Court considered whether the

Odometer Act, 49 U.S.C. §32701, required an aggrieved consumer to allege and prove specific

intent to defraud with respect to a vehicle's mileage.  The Court recognized that the plain

language of the Odometer Act does not require specific intent to defraud with respect to mileage,

and that an allegation of general intent to defraud was sufficient to state a claim.

> The Eleventh Circuit stated:
>
> Samkle argues that although it may have acted "with intent to defraud" Ms.
> Owens when it concealed the title from her, the Complaint still fails to state a
> cause of action because the fraud referenced in the statute can only relate to the
> vehicle mileage.  However, to accept this argument would violate the first canon
> of statutory construction, which requires that courts give effect to the plain and
> unambiguous language of the statute.  Shaw v. Delta Airlines, 463 U.S. 85, 97
> (1983). ("We must give effect of this plain language unless there is good reason to
> believe Congress intended the language to have some more restrictive meaning").
> "As in any case of statutory construction, our analysis begins with 'language of

the statute' and whether the statutory language provides a clear answer, it ends there as well." <u>Hughes Aircraft Company v. Jacobson</u>, 425 U.S. 432, 438 (1999); <u>Estate of Cowart v. Niklos Drilling Company</u>, 505 U.S. 469, 475 (1992).  In other words, the courts must "presume that Congress said what it meant and meant what it said." <u>Harry v. Marchant</u>, 291 Fd. 3d 767 (770)(11th Cir. 2002).

*    *    *

Thus, the statute's plain language does not admit to the district court's limiting construction, which **reads words into the statute that do not exist.**  <u>United States v. Fisher</u>, 289 Fd. 3d 1329, 1338 (11th Cir. 2002).  ("If the statute's meaning is plain or ambiguous, there is no need for further inquiry.  The plain language is presumed to express congressional intent and will control the statute's interpretation").

<u>Id.</u> at 1321 (emphasis added)

As §679.613(1)(d), the provision under scrutiny, clearly requires a "statement" of a right to an accounting, United Auto did not have the right or the discretion to vary from the required disclosure. The omission is plain. The failure of United Auto to provide the disclosure renders the Notice of Sale insufficient as a matter of law.

### 3.  Analysis of the "Gratuitous Accounting"

At first glance, the argument of United Auto that it ostensibly complied with the "spirit" of §679.613(1)(d) appears to have merit. After all, in the Notice of Sale, United Auto stated that Mr. Garcia had the right to redeem the Vehicle by paying the "full amount show below" as the "total due" within ten days of the date of the Notice of Sale (Complaint - Exhibit "B"). United Auto then went on to provide the following breakdown of the "total due," albeit in someone's handwriting :

| | |
|---|---|
| Amount due on Contract or Agreement (all payments being due) | $5156.36 |
| Total amount of Overdue Payments (at Time of Acceleration) | ($550.84) |
| Accrued Delinquency and Collection Charges ($171.16) | $ 171.16 |
| Repossession Costs and Fees: | $   90.00 Est. |

Less Estimated Unearned Finance Charge ($_____)

19

Less Estimated Refund on Canceled Insurance ($_____)

| | | |
|---|---|---|
| | TOTAL REFUND | $_____ |
| | TOTAL DUE | $ 5417.52_____ |

(Complaint - Exhibit "B")

In order to understand how greatly the position of United Auto offends the statutory directive, one needs to analyze the method of determining the all-important redemption amount. The math is more than the so-called "total due" which United Auto so graciously provided. As stated by one treatise on the issue:

> Critical to calculation of the amount that must be tendered is the treatment of unearned finance charges and insurance premiums. When the total amount of the debt has been accelerated, creditors are entitled to receive the outstanding principal, but are not entitled to receive unearned interest or insurance premiums. When unearned interest and insurance premiums must be rebated, how the rebates are to be calculated and what penalties exist for failing to make proper rebates are often specified in state law regulating maximum finance charges. These issues are explored in more detail in other chapters. A creditor's insistence on tender of an amount greater than the amount actually due and owing may waive the requirement of a formal tender, with the result that the creditor may be liable for conversion. If the creditor asks for a redemption amount less than that to which it is entitled, the debtor need tender only the amount requested.

*Repossessions,* 6th Edition, National Consumer Law Center (2005)

Thus, to protect consumers such as Mr. Garcia, the legislature directed that a disclosure be made to consumers as to the right of consumers to obtain an accounting. As reflected in the above "math" of United Auto, United Auto did not account for unearned interest and insurance premiums. Without a disclosure that informs consumers such as Mr. Garcia that the consumer had the right to request an accounting themselves, the consumer is placed in the unenviable position of having to simply accept the handwritten scribbled disclosure of the "amount due."

20

The omission by United Auto is a violation of the UCC. Indeed, with respect to consumer transactions as in the instant case, "a notification that lacks any of the information [required under Florida Statutes §679.614(1)] is insufficient as a **matter of law**." *Comment 2*, Florida Statutes §679.614. (emphasis added)

### D.   THE TERMINATION OF THE RIGHT OF REDEMPTION AT ANY TIME PRIOR TO THE DISPOSITION OF THE COLLATERAL IS AN UNEQUIVOCAL VIOLATION OF THE REQUIREMENTS OF ARTICLE IX, UCC, FLORIDA STATUTES §679.623.

In the Complaint, Mr. Garcia asserts that United Auto violated the requirements of Article IX by stating that the right of redemption expired "within ten days of the date" of the Notice of Sale (Complaint ¶15F). On this point, United Auto unabashedly concedes that the Notice of Sale did in fact limit the redemption period to ten days, subject to an additional ten days if a request was made (Motion to Dismiss, p.9, footnote 2). To excuse its noncompliance, United Auto makes what can best be characterized as a gross misstatement of law to the extent that Mr. Garcia is compelled to recite the argument in its entirety as follows:

> This allegation fails to state a claim because, pursuant to Section 679.614, a telephone number for redemption of the collateral must be required only if the consumer has a right (as defined by Section 679.623) to redeem the collateral. This allegation fails on two levels.  First, the Notice did not contain a phone number that Garcia could call to determine how to redeem the collateral because, after UACC repossessed the car, Garcia no longer had a statutory right to redeem it.  Section 679.623 allows a debtor to redeem collateral "at any time ***before*** a secured party... has collected the collateral under 679.607. Fla. Stat, 679.623(3)(a)(emphasis added). In this case, UACC had already collected the collateral upon Garcia's default, as it was allowed to do by Section 679.607. Since Garcia had no statutory right of redemption under Section 679.623, UACC was not required to provide "[a] telephone number from which the amount that must be paid to the secured party to redeem the collateral under 679.623 is available."

Fla. Stat.§679.614(1)(c).

(Motion to Dismiss - p.8; emphasis by United Auto)

Florida Statutes §679.623(3)(a) unambiguously states that redemption may occur at any time before a secured party, *inter alia* has disposed of collateral or entered into a contract for disposition under Florida Statutes §679.610.  Florida Statutes §679.623(3)(b).  This right is absolute with respect to personalty such as an automobile. See, e.g., In Re Moffett, 356  F. 3d 518, 522 (4th Circ. 2004)[right to redeem continues until sale under revised Article IX]; Wallace v. General Motors Acceptance Corporation, 102 B.R. 114 (S.D. Ohio 1989)[right of redemption of car continues even after creditor obtains "repossession title").  Emmons v. LaMaster, 10 P. 3d 33 (2000); Haraway v. Burnett, 33 U.C.C. Reporter Service 2d 1256 (Tenn. Ct. App. 1997)[redemption timely when debtor, prior to secured party's disposition of collateral, filed a complaint for injunction to redeem tender of money].  Barnett v. Brook Road, Inc., 457 F.Supp. 2d 647 (E.D. Va. 2006)[after discussion of right of redemption in auto repossessions, District Court awarded $13,507.43 in statutory damages].

As recited above, United Auto claims that the redemption period for the Vehicle terminated upon repossession as it had "collected the collateral" under Florida Statutes §679.607. Florida Statutes §679.623(3)(a).  Section 679.607, however, only pertains to "Sales of Accounts and Chattel Paper" — that is the right of a secured party dealing with **account debtors**.  An "account debtor" is defined as meaning a person obligated on an account, chattel paper or general intangible.  Florida Statutes §679.1021. This position makes sense as a secured creditor with a security interest in a cash account or account receivable belonging to a debtor need not give a redemption notice once the cash account or receivable is collected from a third party.

22

In contrast, to regain possession of a repossessed automobile, the debtor must exercise their right of redemption in accordance with Florida law before the secured creditor's sells or otherwise disposes of the Vehicle.  See, Florida Statutes §679.623(3); In Re: Johnson, 328 B.R. 234 (M.D. Fla. 2005). "Upon repossession, the debtor has the right to redeem the repossessed vehicle and, if the creditor violates the right, the debtor may recover damages." Id. at 236; In re: Menasche, 301 B.R. 757 (Bank.S.D.Fla. 2003).

United Auto is unequivocally dead wrong.  Section 679.623(3)(a) does not apply to consumers such as Mr. Garcia as he is "not an account debtor" and is not involved in a "sale of account" or "chattel paper."  As Mr. Garcia is involved in a consumer goods transaction, he has a statutory right of redemption until United Auto sells or otherwise disposes of the repossessed vehicle.  See, Florida Statutes §679.623(3)(b).  Indeed, United Auto's argument is fatally flawed because under its warped version of the UCC, no debtor whose vehicle was repossessed would ever have a right to redeem it.  Thus, it would eliminate the very purpose of the statutory right of redemption. The fallacy of the uninformed argument of United Auto is fully demonstrated by the veritable legion of cases which assessed statutory damages for acts of secured creditors which were in derogation of the redemption rights of consumers.

Interestingly, contrary to the allegations of United Auto, the Notice of Sale discloses the right of redemption.  At the top of the notice, the notice states "you have the right to redeem the motor vehicle by paying the undersigned at the address indicated below."  Mr. Garcia has a statutory right of redemption which was unlawfully limited by United Auto to only ten (10) days from the date of the notice as opposed to the time set forth in Florida Statutes §679.623.  As such, United Auto has not proceeded in accordance with Article IX, Part 6, to the extent that a

cause of action under the civil remedy section exists.

### E.  THE FAILURE OF UNITED AUTO TO PROVIDE THE STATUTORY CONTACT INFORMATION IN THE NOTICE OF SALE CONSTITUTES A VIOLATION OF THE REQUIREMENTS OF ARTICLE IX, UCC, FLORIDA STATUTES §§679.614(1)(c) AND (1)(d).

#### 1.  Revisit of Redemption Issue

In his Complaint, Mr. Garcia asserts that United Auto violated the requirements of the UCC with respect to its failure to provide telephonic contact information for the exercising of the right of redemption and contact information for obtaining additional information concerning the disposition of the secured obligation under Florida Statutes §§679.614(1)(c) and (1)(d), respectively. In its Motion to Dismiss, United Auto attempts to excuse its noncompliance primarily through a baseless argument that Mr. Garcia and the other members of the class did not have a right of redemption (Motion to Dismiss - p.8). Accordingly, the argument provided above by Mr. Garcia addresses this aspect of the Motion to Dismiss.

#### 2. Importance of Telephonic Contact Information

Florida Statutes §679.614(1)(c) expressly required United Auto to provide "a telephone number from which the amount that must be paid to the secured party to redeem the collateral under §679.623 is available." The Notice of Sale does not in any way provide such a telephone number. Indeed, United Auto does not even attempt to suggest that it does.

United Auto argues that because it provided the amount of the "total due" that it was then excused from providing a telephone number as well (Motion to Dismiss - p.9). The argument of United Auto is without merit as it fails to consider that a consumer debtor is statutorily entitled to a telephone number for the purpose of obtaining information regarding the monies owed. The

24

purpose of the telephone number is to provide a debtor with answers to such basic questions as "what forms of payment are accepted ?," "what information did United Auto rely on in determining the 'total due'?," "did you account for all of my payments?," and the like. The legislature purposely required a telephone number to be placed in the statutory notice. Without the ability to contact United Auto by telephone, a consumer such as Mr. Garcia is relegated to the unenviable position of having to communicate in writing — a position which apparently United Auto advocates. The deficiency in the Notice of Sale is reasonably calculated to cause consumers such as Mr. Garcia to lose their vehicles by not having the ability to make that all-important telephonic contact.

### 3. Importance of General Contact Information

With respect to general contact information, Florida Statutes §679.614(1)(d) requires that a secured creditor provide "a telephone number or mailing address from which additional information concerning the disposition of the obligation secured is available." As referenced above, the Notice of Sale does not contain any telephone number.

As pointed out by United Auto, the Notice of Sale does in fact include an address, but with the statement that :

> [U]pon written request, the Holder shall furnish a written accounting regarding the disposition of the Motor Vehicle herein described. Such request must be personally served or sent by first-class mail, postage pre-paid, or certified mail, return receipt requested to the address of the Holder designated below.
>
> (Complaint - Exhibit "B")

While United Auto provides an address of "P.O. Box 590264, Fort Lauderdale, Florida 33359," the Notice of Sale fails to state that this address may be used for additional information

as required by the statute. The Notice of Sale **only mentions that a written accounting will be furnished by personally serving or mailing a request to the address**.[3] As the Notice of Sale lacks the required information under the UCC, the Notice of Sale is defective as a matter of law. See, *Comment 2*, Florida Statutes §679.613.

## IV.  CONCLUSION

The Notice of Sale is on its face noncompliant with the requirements of Article IX, Part VI of the UCC.  United Auto failed to provide five of the requisite disclosures concerning its intentions and the rights of consumers with respect to the disposition of the collateral. Moreover, United Auto unlawfully limited the redemption period of Mr. Garcia and the other class members which was contrary to well-established statutory and case law authority.

United Auto could have availed itself of the "safe-harbor" form, which the legislature set forth in Florida Statutes §679.614(3).  Instead, United Auto authored a form notice which violates Article IX as a matter of law (in addition to being inartful and sloppy).  For this reason, this Court could very well review the subject notice and make a determination at this very early stage that United Auto violated the UCC as a matter of law.  Indeed, the claims of Mr. Garcia are especially appropriate for class treatment.  See, e.g., Walczak v. Onyx Acceptance Corp., 850 NE 2d 357 (Ill. 2nd Dist. 2006).

Based on the foregoing argument, it is respectfully submitted that the Court should deny

---

[3]  In order to avoid any potential confusion, the disclosure concerning a written accounting in the Notice of Sale relates to the disposition of the Vehicle as opposed to the "unpaid indebtedness" which is the basis of the claim of Mr. Garcia under Florida Statutes §679.613(1)(d).

the Motion to Dismiss in its entirety and direct that the Defendant promptly file an answer to the

Complaint.  In the event this Court finds that any aspect of the Complaint to be deficient,

Plaintiff would respectfully request an opportunity to amend to cure any such deficiencies, if

possible.


/s/ Robert W. Murphy_____
Robert W. Murphy
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telefax
rphyu@aol.com

Manuel A. Garcia-Linares
RICHMAN GREER BRUMBAUGH
MIRABITO & CHRISTENSON, P.A.
Miami Center, 10th Floor
201 South Biscayne Boulevard
Miami, FL 33131
(305) 373-4000 Telephone
(305) 373-4099 Telefax
mlinares@richmangreer.com
Co-Counsel for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on November 2, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Lawrence P. Rochefort, Esquire, Akerman Senterfitt, 222 Lakeview Avenue, Suite 400, West Palm Beach, Florida 33401; Claudia Callaway, Esquire, Sabrina Rose-Smith, Esquire, Manatt, Phelps & Phillips, LLP, 700 12th Street NW, Suite 1100, Washington, DC 20005; and to Manuel A. Garcia-Linares, Esquire, Richman, Greer, Brumbaugh, Mirabito & Christenson, P.A., Miami Center, 10th Floor, 201 South Biscayne Boulevard, Miami, Florida 33131, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/  Robert W. Murphy
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Facsimile
rphyu@aol.com